U.S. DISTRICT COURT
N.D. OF N.Y.
FILED

NOV 0 5 2002

LAWRENCE K. BAERMAN, CLERK
ALBANY

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

PATRICK BRERETON,

                    Plaintiff,

              v.

UNUMPROVIDENT CORPORATION
18 Chestnut Street
Worcester, Mass. 01608-1258

NATIONAL LIFE INSURANCE COMPANY
National Life Drive
Montpelier, VT 05602,

                    Defendants.

**NOTICE OF REMOVAL**

Index No.: 2002-3024

**02 CV 1402**

**DNH  RFT**

        Defendant UnumProvident Corporation ("UnumProvident"), for the purpose only

of removing this action to the United States District Court for the Northern District of New York,

states as follows:

        1.        State Court Action.  This is an action filed on October 3, 2002 in the

Supreme Court of the County of Saratoga, State of New York, numbered 2002-3024 on the

docket of the Court.  Upon information and belief, the summons and complaint were served on

UnumProvident through the New York State Department of Insurance on or about October 3,

2002 and received by UnumProvident on October 10, 2002.

2. <u>Proceedings, Process, Pleadings or Papers</u>. The only process, pleadings or papers served in this action are the summons and complaint, copies of which are attached as Exhibit "A".

3. <u>Action for Benefits</u>. In the complaint, plaintiff seeks to recover benefits under long term disability insurance policies allegedly issued by defendant National Life Insurance Company, in an unspecified amount, and damages in the amount of five million ($5,000,000.00) dollars.

4. <u>Diversity Jurisdiction</u>. The Court has original Diversity jurisdiction pursuant to the provisions of 28 U.S.C. § 1332(a)(1) in that the matter in controversy exceeds the sum or value of $75,000, and is between citizens of different states.

5. <u>Removal Jurisdiction; Timeliness</u>. By reason of the foregoing, this action is within the Court's removal jurisdiction, 28 U.S.C. § 1441(b), because none of the parties served as defendants is a citizen of the State in which the action is brought. Removal is timely because this notice of removal is filed within thirty (30) days after receipt by UnumProvident of the summons and complaint.

6. <u>Notice of Removal</u>. Written notice of the filing of this notice will be given to the adverse parties, and a true and accurate copy of this notice will be filed with the Clerk of the New York State Supreme Court, County of Saratoga.

## **RELIEF REQUESTED**

It is respectfully requested that the United States District Court for the Northern District of New York accept this notice of removal and that it assume jurisdiction of this action and issue such other further orders and processes as may be necessary to bring before it all parties necessary for the trial.

Dated November 5, 2002

BOND, SCHOENECK & KING, PLLC

By: _____
Arthur J. Siegel
Federal Bar Roll No.: 102606
Attorneys for Defendants
Office and P.O. Address
111 Washington Avenue
Albany, New York 12210-2211
Telephone: (518) 462-7421

TO:   Cusick, Hacker & Murphy, LLP
Attorneys for Plaintiff
7 Airport Park Boulevard
P.O. Box 104
Latham, New York 12110-0104
(518) 783-3843

3

## CERTIFICATE OF SERVICE

I CERTIFY THAT ON THE  5TH DAY OF November, 2002, a copy of the

foregoing notice of removal was served upon the following counsel by United States mail:


CUSICK, HACKER & MURPHY, LLP
Attorneys for Plaintiff
7 Airport Park Boulevard
P.O. Box 104
Latham, New York 12110-0104
(518) 783-3843


_____
Arthur J. Siegel

4

# EXHIBIT
# A

CTK OCT 1 0 2002

DEC OCT 7 ? 2002

STATE OF NEW YORK
SUPREME COURT          COUNTY OF SARATOGA

PATRICK BRERETON,

                    Plaintiff,

     -against-                              SUMMONS
                                            Index No.:
UNUMPROVIDENT CORPORATION                   2002-3024
18 Chestnut Street
Worcester, Mass. 01608-1528


NATIONAL LIFE INSURANCE COMPANY
National Life Drive
Montpelier, VT 05602

                    Defendants.

TO THE ABOVE NAMED DEFENDANTS:

     You are hereby summoned and required to serve upon the
plaintiff's attorney a Verified Answer to the Verified Complaint
in this action within thirty (30) days after the service of this
summons, exclusive of the day of service.  In case of your
failure to answer, judgment will be taken against you by default
for the relief demanded in the complaint.

DATED: October 1, 2002

SICK, HACKER
MURPHY, LLP
ORNEYS AT LAW

2002 OCT -3 AM 11:44
SARATOGA COUNTY
CLERK'S OFFICE
BALLSTON SPA, NY

Yours, etc.

CUSICK, HACKER & MURPHY, LLP

By:

THOMAS D. BUCHANAN, ESQ.

Attorneys for Plaintiff
7 Airport Park Boulevard
P. O. Box 104
Latham, New York 12110-0104
(518)  783-3843

Trial is desired in the
County of Saratoga

The basis of venue designated above
is Plaintiff's residence

CTK OCT 1 0 2002

STATE OF NEW YORK
SUPREME COURT        COUNTY OF SARATOGA

PATRICK BRERETON,

                    Plaintiff,

    -against-                          VERIFIED COMPLAINT
                                       Index No.:
UNUMPROVIDENT CORPORATION
18 Chestnut Street
Worcester, Mass. 01608-1528

NATIONAL LIFE INSURANCE COMPANY
National Life Drive
Montpelier, VT 05602

                    Defendants.

2002 OCT -3  AM 11:45
SARATOGA COUNTY
CLERK'S OFFICE
BALLSTON SPA, NY

        The plaintiff, Patrick Brereton, by his attorneys, Cusick,
Hacker & Murphy, LLP, as and for a complaint, upon information
and belief, hereby alleges that:

        1.    Plaintiff was and is a resident of the County of
Saratoga, and State of New York, residing at 12 Vermont Street,
Saratoga Springs, New York 12866.

        2.    The defendant, Unumprovident Corporation, is upon
information and belief, a Corporation incorporated under the laws
of Delaware, with a principle office located at 18 Chestnut
Street, Worcester, Massachusetts, 01608.

        3.    At all relevant times herein mentioned, defendant

Unumprovident Corporation (hereinafter "Unumprovident) was and is duly licensed as a disability insurance carrier in the State of New York, engaged in the business of issuing policies of insurance to the public, and is subject to the laws and regulations of the State of New York.

4.   Defendant National Life Insurance Company is, upon information and belief, a Corporation incorporated under the laws of the State of Vermont, with a principle place of business located at National Life Drive, Montpelier, Vermont, 05602.

5.   At all relevant times herein mentioned, defendant National Life Insurance Company was and is a licensed disability insurance carrier in the State of New York, engaged in the business of issuing policies of Insurance to the public, and is subject to the laws and regulations of the State of New York.

6.   At all times hereinafter mentioned, plaintiff was insured under a long term disability insurance policy issued by defendant National Life Insurance Company, bearing policy number D1547097, a true and correct copy of which is attached hereto and incorporated herein as Exhibit "A".

7.   At all times hereinafter mentioned, plaintiff was an insured under a long term disability policy by defendant National Life Insurance Company, bearing policy number D1615945, a true and correct copy of which is attached hereto and incorporated herein as Exhibit "B".

8.   At all times hereinafter mentioned, plaintiff was an

SICK, HACKER
MURPHY, LLP
ORNEYS AT LAW

insured under a long term disability policy issued by defendant National Life Insurance Company(hereinafter "National"), bearing policy number D2128361, a true and correct copy of which is attached hereto and incorporated herein as Exhibit "C".

9. At all times hereinafter mentioned, the policies were and are private disability policies offered by an insurer under which no contributions were made by an employer or an employee organization. Participation in the program by plaintiff was voluntary. The employer received no consideration in the form of cash or otherwise in connection with the program. As such, the policy is a private disability policy and is therefore not subject to the provisions the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §1001 ("ERISA").

10. Under the terms of policy number D1547097, attached as Exhibit "A",

> Total Disability - Total Disability, resulting from accident of sickness, means the inability of the insured to engage in an occupation for remuneration or profit. During the first 120 months of continuous disability, occupation means the occupation of the insured at the time such disability began, thereafter it means any occupation in which he might reasonably be expected to engage because of education, training, or experience and with due regard to his vocation and earnings at the time such disability began. The insured shall not be considered totally disabled unless he establishes that he is under the care and attendance of a licensed physician other than himself during any period of claimed disability.

SICK, HACKER MURPHY. LLP ORNEYS AT LAW

11.   Under policy D1547097, the total disability income
benefit is $2,000.00 per month until the insured's 65th birthday.

12.   Under the terms of policy number D1615945, attached as
Exhibit "B",

> Total Disability - Total disability means the
> inability of the insured, resulting from
> accident bodily injury or from sickness to
> engage in an occupation for remuneration or
> profit.  Occupation means the regular
> occupation of the insured at the time such
> disability began, except if, for any period
> of continuous disability, any income benefit
> has been paid to the insured's 55th birthday
> or for 60 months, which ever is longer,
> thereafter occupation means any occupation in
> which the insured might reasonably be
> expected to engage because of education,
> training, or experience and with due regard
> to his vocation and earnings at the time such
> disability began.   The insured shall not be
> considered totally disabled unless he
> establishes that he is under the care and
> attendance of a licensed physician other than
> himself during any period of claimed
> disability.

13.   Under the terms of policy number D1615945 total
disability benefits are $650.00 per month until age 65.

14.   Under the terms of policy number D2128361, attached as
Exhibit "C",

> Total Disability - The insured shall be
> deemed totally disabled only if the insured:
>
> 1.   Is unable to perform the material and
>      substantial duties of an occupation due
>      to:
>
>      a)   Accidental injury; or
>      b)   Sickness;
>
> Until an income benefit for any period  of
> continuous disability has been paid to the

insured's 55th birthday, or for 180 months, whichever is longer, occupation means the occupation of the insured at the time such disability begins. Thereafter it means any occupation for which the insured is or becomes reasonably fitted by education, training or experience. Due regard shall be given to vocation and earnings at the time such disability began. To be deemed totally disabled and insured must be under the imprudent care of a licensed physician. The physician must be someone other than the insured.

15.   Disability benefits under policy number D2128361 total $6,038.00 per month for life.

16.   Plaintiff was born on July 5, 1943 and is therefore currently 59 years old.

17.   Policy number D2128361, attached as Exhibit "C" includes a cost of living benefit in addition to total disability benefits and waiver of premium benefits.

18.   At all times hereinafter mentioned, plaintiff was an owner and an insured under a Professional Overhead Expense Disability Policy, bearing policy number D2128363 issued by defendant National Life Insurance Company, a true and correct copy of which is attached hereto and incorporated herein as Exhibit "D".

19.   At all times hereinafter mentioned, plaintiff was an insured under a Professional Overhead Expense Disability Policy issued by defendant National Life Insurance Company, bearing policy number D2149441, a true and correct copy of which is attached hereto and incorporated herein as Exhibit "E".

SICK, HACKER
MURPHY, LLP
ORNEYS AT LAW

20. Under Professional Overhead Expense Disability Policies number D2128363 and D2149441 (hereinafter "Overhead policies"), defendants were to cover the normal and regular charges usually incurred by plaintiff for plaintiff's office or place of business in the event that plaintiff became totally disabled. Nothing in said Overhead policies limited plaintiff's coverage to the expenses for the business operating at the time the disability began.

21. Under policy D1547097, D1615945, D2128361, D2128363, and D2149441 (hereinafter "the policies"), National agreed to waive premium benefits during any period of continuous total disability.

22. On or about the 26th day of June, 1996, plaintiff submitted an individual disability claim form to defendant National under the policies. A copy of said individual disability claim form is attached hereto and incorporated herein as Exhibit "F". According to said disability claim, plaintiff suffers from Avoidant Personality Disorder and Adjustment Disorder due to job related stress. Plaintiff consulted with Dr. Francis Durgin, M.D., Dr. Susan McPhillips, and Dr. Harvey Nordsey, and Dr. Cheryl M. Carlucci for this condition.

23. In his disability claim plaintiff characterized his occupation immediately prior to the day he became disabled, as "wholesale distributer of contract furniture and manufacturers representative of contract furniture." He described his duties

SICK, HACKER
MURPHY, LLP
ORNEYS AT LAW

as:

- Travel to meet with clients and vendors - 66% of the time per week for 40 hours, approximately.
- Meeting with customers, vendors and advisors - 16% of the time per week for 10 hours, approximately.
- Meeting with office staff and completion of bid and order documents 17% of time per week for 10 hours, approximately.

Plaintiff further described his duties and disability in his response to several written questions by defendant National.

24.   As of January 29, 1996 and as provided on the disability claim form, plaintiff was unable to perform the material and substantial portion of the duties of his occupation due the stress associated therewith.   Plaintiff lists as the physical requirements of his occupation "extensive travel and meeting with people - paperwork".   Being unable to withstand the isolation associated with extensive travel, plaintiff's disability is incompatible with his occupation. His work experience consists of almost entirely of furniture sales from 1970 to present, requiring extensive travel and the ability to handle the stress and strains associated therewith.

25.   Plaintiff's treating physician, Dr. Francis J. Durgin, a licensed Psychiatrist, has continuously and consistently maintained that plaintiff suffers from depression, is withdrawn, dysphoric and unable to travel.   According to Dr. Durgin

ICK, HACKER
MURPHY, LLP
TORNEYS AT LAW

plaintiff is unable to tolerate the isolation of extensive travel and his prognosis is "guarded". Dr. Durgin has diagnosed plaintiff under DSM IV 296.33, 301.82, 300.4, and has further characterized plaintiff's symptoms as "despondent" and "reclusive." In addition to the inability to travel alone or be in an isolated situation, plaintiff cannot resolve conflicts and/or establish meaningful relationships. According to Dr. Durgin, plaintiff's disability became permanent in January of 1996. Further, according to Dr. Durgin, his diagnosis has been confirmed by Dr. Prakash Masand, M.D. and Dr. Jennifer Rich, M.D. Since, as of 1996, Mr. Brereton's depression was progressively increasing, it became apparent to Dr. Durgin that his long hours of solitary travel, day after day and week after week, was leading to deepening of his depression so that suicidal ruminations began occurring and becoming more frequent and more specific. His solitary travel for business was rapidly becoming dangerous. According to Dr. Jeanette Thornton, M.D., plaintiff's "major depression, alcoholism, and social phobia" means that he "can no longer perform the duties required to function within his previous occupation."

26. As a result of his disability, plaintiff has suffered a substantial reduction of income.

27. On or about November 5, 1996 defendant National approved plaintiff's application for benefits under all of the policies effective January 29, 1996. Copy of said approval is

attached hereto as Exhibit "G".

28.  On or about September 20, 2000, defendant National disclaimed further benefits on the Overhead policies telling plaintiff "since you are not longer incurring normal and regular expenses from the business you were operating at the time your disability began, you are not entitled to additional business overhead expense policies through the two above mentioned policies."  No citation to language in the Agreement is made as, in fact, there is no definition defining business as the business operated at the time the disability began.  Said disclaimer is attached hereto as Exhibit "H".  With absolutely no textual basis on which to disclaim coverage on the overhead policies, defendants disclaimer was unreasonable, arbitrary and capricious. The denial was the result of defendants deliberately biased and self-serving misinterpretation of the contract.  The denial is conclusory in form and substance with no reasonable basis rooted in the contracted cited therein.

29.  After having paid plaintiff total disability benefits for over 5 years, and without citation to any changes in plaintiff's circumstances, the defendants disclaimed total disability benefits on November 7, 2001 concluding, based upon an IME by Dr. Steven Mann and Dr. Lori Szostak that plaintiff "is not disabled, despite the presence of mild depression." Defendants rely upon the statement of Dr. Mann that "nothing in Mr. Brereton's current testing and assessment completed by this

clinician would preclude him from selling furniture and driving himself to sales appointments." Attached hereto as Exhibit "I" is a copy of said disclaimer. Upon an appeal by plaintiff, defendant adhered to its decision to disclaim coverage on June 25, 2002.

30. The conclusions relied upon by defendant are at odds with the results of an examination by their own IME doctor, Dr. Miles Schwartz, which took place during June and July 1997. Dr. Schwartz diagnosed plaintiff with, among other things, schizoaffective disorder (depressive type), learning disorder not otherwise specified and obsessive-compulsive and Avoidant characteristics. According to Dr. Schwartz, "as has become quite apparent, the claimant's clinical picture is atypical and complex. Depressive features are present but cannot account for the entirety of the presentation. There are obsessive-compulsive avoidant behaviors, as well as strong evidence for previously unrecognized psychotic elements." Dr. Schwartz went on, "Mr. Brereton does show impairments in memory, complex mental tracking and executive functioning as described in the results section of this report... cognitive deficits are noted... he also has mild deficits in verbal comprehension." Upon receipt of Dr. Schwartz's report, defendant continued paying total disability benefits for another four years.

31. Sometime after plaintiff submitted his claim to National to pay total disability benefits under the policies,

Unumprovident or its predecessor, undertook to administer plaintiffs claim.

32.   During the period from January 29, 1996 through November 7, 2001 plaintiff continued to receive monthly disability benefits under the policies.

33.   Defendants' denial was based principally upon a review of the claim file, including medical records therein, by defendants staff.  Further, the Independent Medical Examinations relied upon by the defendants are wholly at odds with both plaintiff's treating physicians and defendant National's own IME examination conducted by Dr. Schwartz.  Upon information and belief, the defendants reviewed the file and concocted a pretext to deny plaintiff's ongoing claim for benefits.

34.   Defendants have refused to provide plaintiff with the benefit of his policy of long term disability insurance.

35.   Defendant lacked any medical basis for making the denial.

36.   The denial was the result of the defendant's deliberately biased and self-serving mis-reading and mis-interpretation of the record.

37.   Plaintiff paid the premiums due and each aforesaid policy was in full force and affect.

AS AND FOR A FIRST CAUSE OF ACTION FOR BREACH OF CONTRACT

38.   The plaintiff repeats and realleges each allegation set forth in paragraphs number 1 through 37, as if fully set forth at

length herein.

39.   Despite the submission of reasonable proof and demand for payment with respect to plaintiff's claim for disability benefits under the policies, defendants have not paid all of the benefits to which plaintiff is entitled thereby.

40.   As a result of defendants' breach, plaintiff has been damaged.

## AS AND FOR A SECOND CAUSE OF ACTION FOR BREACH OF CONTRACT

41.   The plaintiff repeats and realleges each allegation set forth in paragraphs number 1 through 40, as if fully set forth at length herein.

42.   Defendants have breached the covenant of good faith and fair dealing regarding insurance contracts and, as a result of such breach, plaintiff has suffered consequential damages.  Said damages include, but are not limited to, attorneys fees associated with this action.

43.   Defendant acted in bad faith by undertaking a conscious campaign calculated to avoid payment on plaintiff's claim for coverage through an ongoing pattern of avoiding the claim, multiple requests for additional documentation upon receipt of which further documents would be demanded, after which plaintiff's claim file would then be transferred to a new examiner, who in-turn would make more requests.  Moreover, defendants stonewalled and resisted plaintiff's legitimate effort to have medical reports sent to his own doctor for review, first

objecting based upon lack of expertise, then further delaying by insisting upon unnecessary so-called "confidentiality agreements." When the reports were finally sent it became clear that they were not the original reports from Dr. Mann, upon which defendants claim to have relied. Plaintiff has a contractual right to receive a copy of the original report. Plaintiff has demanded said report and such demand has been wrongfully refused by defendants.

44. While defendant National's own independent medical examination doctor confirmed plaintiff's sickness in June and July 1997, defendant waited more than four years before requiring plaintiff to submit to new independent medical examinations with different doctors, Dr. Steven Mann and Dr. Lori Szostak. Said independent medical examinations were merely a sham and a purposeful attempt to deny plaintiff disability benefits when defendant's own independent medical examination had previously confirmed plaintiff's disability. Defendants concluded, without any basis, that plaintiff must be malingering and set out to retain a different set of doctors who would likely reach defendant's preconceived conclusion.

45. In addition to the emotional distress and strain associated with defendant's conduct in processing plaintiff's claim, plaintiff suffered further economic harm during the period in which defendant has failed to pay total disability benefits. Such economic harm was reasonably foreseeable. Accordingly,

defendant is liable in excess of the policy limits for breach of
the duty to investigate, bargain, and settle plaintiff's claim in
good faith in the amount specified in the insurance policy.
Although the policy limits define the amount for which the
insurer may be held responsible in performing the contract, they
do not define the amount for which it may be liable upon a
breach.

46.  As a result of defendants conduct, plaintiff's
condition was caused to worsen to such an extent so as to cause
him to be admitted in a psychiatric institution on two occasions
for a period of time.  This caused plaintiff to suffer extreme
emotional distress, including suicidal tendencies.

47.  The insurers avoidance and ultimate rejection of the
claim was based not upon a reasonable assessment of plaintiff's
disability but rather, solely upon it own financial self
interest.

48.  Plaintiff and defendant occupied disparate bargaining
positions.

49.  The contract contained standardized terms leaving
plaintiff in a "take it or leave it" position, with no real
bargaining power.  Accordingly, public policy further dictates
that defendant should be liable for plaintiffs attorneys fees due
to defendants' bad faith conduct.

50.  Based upon the foregoing, defendant breached the duty
of good faith and is liable for actual and consequential damages

caused thereby, included but not limited to past and future benefits and attorney's fees.

**AS FOR A THIRD CAUSE OF ACTION FOR UNFAIR PRACTICES UNDER GENERAL BUSINESS LAW §349.**

51.  The plaintiff repeats and realleges each allegation set forth in paragraphs number 1 through 50, as if fully set forth at length herein.

52.  The defendant's deliberate and bad faith course of conduct is aimed at other policy holders in general besides plaintiff himself and has a broader impact upon consumers at large.

53.  Defendant's conduct constitutes a representation or omission which was likely to mislead a reasonable consumer acting reasonably under the circumstances by making a practice of denying a claim without reference to its viability. A deliberate course of conduct was embarked upon by defendants to maliciously, recklessly and without probable cause deny plaintiff total disability benefits.

54.  Defendant's violation of General Business Law §349 is further evidenced by defendant's violation of Insurance Law §2601 which defines unfair claim settlement practices and penalties.

55.  In violation of Insurance Law §2601, Defendants knowingly misrepresented to claimant pertinent facts or policy provisions relating to coverages at issue, failed to acknowledge with reasonable promptness pertinent communications as to claims

SICK, HACKER
MURPHY, LLP
ORNEYS AT LAW

arising under policies, failed to adopt and implement reasonable standards for the prompt investigations arising under its policies, and did not attempt in good faith to effectuate prompt, fair and equitable settlement of plaintiff's claims submitted in which liability has become reasonably clear.

56.  In as much as plaintiff's insurance policies are standard issue policies provided to individual consumers, defendant's conduct constitutes "consumer oriented conduct", and is subject to liability under General Business Law §349.

57.  By virtue of the foregoing, defendant is liable to plaintiff for actual damages.

58.  By virtue of the foregoing, defendant is liable to plaintiff for reasonable attorneys fees.

**AS AND FOR A FOURTH CAUSE OF ACTION FOR REPUDIATION**

59.  The plaintiff repeats and realleges each allegation set forth in paragraphs number 1 through 58, as if fully set forth at length herein.

60.  By virtue of the foregoing, defendant has anticipatorily breached and repudiated the contract with the plaintiff.

61.  Defendant, by advising plaintiff that it would not pay any further claims or benefits has effectively and unequivocally canceled the contract.

62.  Public policy dictates that, where an insurer denies a claim that its employees have reason to know is valid or

JSICK, HACKER
MURPHY, LLP
TORNEYS AT LAW

otherwise engages in bad faith, there is a repudiation of the policy, entitling the insured to the present value of future benefits rather than subjecting plaintiff to further acts of misconduct by defendant.

63.   By virtue of the foregoing, plaintiff is entitled to the present day value of future benefits payable in a lump sum.

**WHEREFORE**, plaintiff demands judgment on the first cause of action in the amount of the monthly benefits of each policy up to the time of verdict and a declaration that defendant must pay such benefits each month in accordance with the terms of the policies "for so long as plaintiff remains totally disabled"; judgment on the second cause of action for the monthly benefit of each policy up to the time of verdict and a declaration that defendant must pay such benefits each month in accordance with the terms of the policies "for so long as plaintiff remains totally disabled", together with consequential damages resulting from plaintiff's emotional distress and economic harm, in the amount FIVE MILLION ($5,000,000.00) DOLLARS, plus attorneys fees; judgment on the third cause of action for the monthly benefit of each policy up to the time of verdict and a declaration that defendant must pay such benefits each month in accordance with the terms of the policies "for so long as plaintiff remains totally disabled", plus attorneys fees; and judgment on the

SICK, HACKER
MURPHY, LLP
ORNEYS AT LAW

fourth cause of action in the amount of FIVE MILLION

($5,000,000.00) DOLLARS, plus attorneys fees.

DATED:      October 1, 2002

                                Yours, etc.,

                                CUSICK, HACKER & MURPHY, LLP

                    By:

                                THOMAS D. BUCHANAN, ESQ.

                                Attorneys for Plaintiff
                                7 Airport Park Boulevard
                                P. O. Box 104
                                Latham, New York 12110-0104
                                (518) 783-3843

## VERIFICATION

STATE OF NEW YORK     )
                                         )   SS.:
COUNTY OF ALBANY      )

     **THOMAS D. BUCHANAN** being duly sworn, deposes and says: that deponent is the attorney of record for the Plaintiff, Patrick Brereton, in the within action; deponent has read the foregoing Complaint and knows the contents thereof; the same is true to deponent's own knowledge, except as to the matters therein stated to be alleged on information and belief, and that as to those matters deponent believes it to be true. This verification is made by deponent and not by the Plaintiff, as said Plaintiff does not maintain an office in the County where your deponent has his offices. The grounds of deponent's belief as to all matters not stated upon deponent's knowledge are as follows: investigation performed and information from various sources.

                             THOMAS D. BUCHANAN, ESQ.

Sworn to before me this
1st day of October, 2002

Notary Public - State of New York

BARBARA MAZZOLA
Notary Public, State Of New York
Qualified In Albany County
No. 01MA5012247
Commission Expires June 15, 20_03_

SICK, HACKER
MURPHY, LLP
RNEYS AT LAW